UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINE DION WILLIAMS,

          Plaintiff,

v.                                 Case No. 14-13677

COMMISSIONER OF SOCIAL        HON. TERRENCE G. BERG
SECURITY,                          HON. CHARLES E. BINDER

          Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on Magistrate Judge Charles Binder's report and recommendation of June 23, 2015 (Dkt. 12), recommending that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the findings and conclusions of the Commissioner be affirmed.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections (Dkt. 13) to the report and recommendation; Defendant filed a response (Dkt. 14) to Plaintiff's objections. A District

Court must conduct a de novo review of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The Court has reviewed Magistrate Judge Binder's report and recommendation, and Plaintiff's objections thereto. For the reasons set forth below, Plaintiff's objections are **OVERRULED**, and the report and recommendation is **ACCEPTED** and **ADOPTED** as the Court's findings of fact and conclusions of law. Consequently, the decision of the Commissioner denying Plaintiff's disability claim is **AFFIRMED**.

## ANALYSIS

### A. The Social Security Act

The Social Security Act (the Act) "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A

claimant qualifies as disabled "if []he cannot, in light of h[is] age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs*, 459 F.3d at 642 (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily

3

> satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.*; § 404.1560(c)(1).

*Combs*, 459 F.3d at 642–43.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that []he is precluded from performing h[is] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the Commissioner is required to show that "other jobs in significant

4

numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

Judicial review of the Commissioner's final decision is authorized pursuant to 42 U.S.C. § 405(g). If the Appeals Council denies review, then the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Judicial review, however, is circumscribed in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quotation marks omitted) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). This substantial evidence standard is less exacting than the preponderance of evidence standard. *See Bass*, 499 F.3d at 509 (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir.

5

1996)). For example, if the ALJ's decision is supported by substantial evidence, "then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

### B. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff raises four objections to the Report and Recommendation, namely, that Magistrate Judge Binder: (1) erred in finding that the ALJ properly evaluated Plaintiff's purported mood disorder and neck and back pain; (2) erred in affirming the ALJ's evaluation of the Plaintiff's credibility, specifically the ALJ's rejection of Plaintiff's testimony concerning his need for breaks during the day, and his need to elevate his legs; (3) erred in purportedly ignoring the opinion of Plaintiff's treating physician, Dr. Backos, that Plaintiff was totally disabled; and (4) erred when he failed to address Plaintiff's many additional arguments in support of disability. As discussed below, none of these objections warrants disturbing Magistrate Judge Binder's recommendation.

#### i) Neck Impairments and Mood Disorder

Plaintiff first objects that Magistrate Judge Binder should have recommended a remand, as the ALJ determined that Plaintiff had only

one severe impairment at step two – status post non-operative fracture of left knee – and failed to recognize Plaintiff's mood disorder, and C-spine and L-spine impairments, as potentially disabling. It appears, then, that Plaintiff is specifically objecting to Magistrate Judge Binder conclusion that the ALJ did not reversibly err in failing to recognize Plaintiff's mood disorder and neck and spine conditions as severe impairments at step two.

However, since the ALJ did recognize Plaintiff's knee fracture as a "severe impairment" at step two, Plaintiff cleared step two of the analysis and the ALJ proceeded to the subsequent steps. This caused the ALJ to consider Plaintiff's severe and non-severe impairments in the remaining steps of the sequential analysis. The fact that some of Plaintiff's impairments were not deemed to be "severe" at step two is therefore legally irrelevant, because Plaintiff's other conditions were still being considered at the subsequent steps of the analysis. *See Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was

7

harmless error where other impairments were deemed severe). The ALJ's opinion explicitly acknowledged this, finding at step two that:

> [Plaintiff] has the following identifiable regulatory "severe" impairments:
>
> Status post non-operative fracture of the left knee.
>
> Non-"severe" mild disc herniation; mild uncovertebral joint spurring left at C4-5 with foraminal narrowing but no stenosis.
>
> The regulatory identified "severe" impairments impose some limits on [Plaintiff's] ability to stand, walk and lift. The non-"severe" impairments are not independently limiting although do act in combination with the "severe" impairments to limit [Plaintiff] as I have found when limiting [Plaintiff's] remaining residual functional capacity (Tr. 58).

In other words, even though the ALJ did not find Plaintiff's spine ailments to be "severe" at step two, the ALJ evaluated the objective medical evidence relating to this condition when fashioning Plaintiff's residual functional capacity.

As to Plaintiff's alleged "mood disorder," Plaintiff's objection does not point to any medical evidence in the record that the ALJ supposedly ignored. Plaintiff's objections lack any survey, much less meaningful discussion, of the medical record, and Plaintiff likewise failed to show any meaningful error in Magistrate Judge Binder's reasoning. "It is well-established that issues adverted to in a perfunctory manner,

8

unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (internal quotation marks and citations omitted); *see also Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones" (internal quotation marks and citations omitted). Furthermore, the Court has independently reviewed the medical records on file, and has not uncovered any significant treatment of Plaintiff for a "mood disorder." Additionally, in Plaintiff's initial disability application, he did not allege that he had a "mood disorder" (Tr. 308).[1]

In sum, substantial evidence on the record supports the ALJ's finding that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity. Specifically, substantial evidence supports the conclusion that Plaintiff's impairments prevented him from working at jobs that exposed workers to temperature extremes, high humidity, moving machinery and unprotected heights.

---

[1] Rather, Plaintiff alleged that the following physical or mental conditions limited his ability to work: (1) slipped disc in back; (2) pinched nerve in back; (3) severe migraines; (4) permanent broken patella in L knee; (5) permanent nerve damage in L knee; (6) arthritis in L foot; (7) gastrointestinal problems; and (8) floaters in eye (Tr. 308).

He was also found incapable of climbing ladders, ramps or scaffolding. Nevertheless, the ALJ found that the Plaintiff retained the residual functional capacity to perform a significant number of sedentary jobs. Plaintiff does not point to any evidence in the record that the ALJ failed to analyze in crafting this residual functional capacity. Thus, this objection is not well-taken.

### ii) Credibility Determination

Plaintiff next argues that the ALJ erred in finding that his claimed limitations were not supported by the medical evidence and were less than fully credible. Specifically, Plaintiff argues that the ALJ should have accepted his testimony concerning his need for breaks throughout the day, and his need to elevate his legs. "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475 (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150–51 (6th Cir. 1990)).

However, "an ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citing *Walters*, 127

F.3d at 531). Notably, an ALJ's credibility determinations about the claimant are to be given great weight, "particularly since the ALJ is charged with observing the claimant's demeanor and credibility." However, they must also be supported by substantial evidence. *See Walters*, 127 F.3d at 531 (citations omitted).

Here, the ALJ specifically set forth his reasons for discrediting Plaintiff's subjective complaints based on the medical evidence in the record and inconsistencies in his testimony. In particular, the ALJ found that:

> [Plaintiff's] allegations are not consistent with his activities. Supposedly he is lying down much of the day, yet he goes to physical therapy three times a week, he writes music and once or twice a year takes a bus to a studio to record it. His cousin Dominic visits daily and Dominic was driving at least until he broke the grandmother's car. [Plaintiff] also has to pick up his medical marijuana himself to stay within the law (Tr. 62).

Plaintiff's objections do not cite to any evidence indicating that this credibility determination was unsupported by substantial evidence. Most notably, Plaintiff does not cite to any objective medical evidence indicating that Plaintiff needs breaks throughout the day, or needs to elevate his legs. Given that an ALJ's credibility determinations are to be given "great weight," there is simply not enough contrary evidence in

11

the record to discard the ALJ's credibility determination. This objection is not well-taken.

### iii) Treating Physician

Next, Plaintiff objects that Magistrate Judge Binder did not reverse the ALJ based on his analysis concerning Plaintiff's treating physician, Dr. Backos. This objection is also without merit. In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *See* SSR 96–2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a

claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544.

When the treating physician's opinion is not controlling the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id*. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. *See* SSR 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").

There is an additional procedural requirement associated with the treating physician rule. Specifically, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at *5. The purpose of this procedural aspect of the treating physician rule is two-fold. First, the explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that []he is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

Magistrate Judge Binder correctly concluded that that the ALJ gave "good reasons" for discounting Dr. Backos's opinion that Plaintiff was completely unable to work and required household assistance (Tr. 471). The reason given was that Dr. Backos offered little objective evidence during the relevant period to support his disability determination. Moreover, the ALJ discounted Dr. Backos's opinion based upon the "negative" examinations (i.e. no significant findings) of

14

Plaintiff's other treating physicians, in particular Dr. Eltawahy.[2] Having reviewed the ALJ's decision, as well as the underlying medical records, the Court agrees with the Magistrate Judge that the ALJ's decision to give Dr. Backos's opinion non-controlling weight was both reasonable and adequately explained. The ALJ based his decision on a review of all of the physicians and other medical professionals who treated and examined Plaintiff, and reached his conclusions based on the entire record. Moreover, the Court has also reviewed Dr. Backos's records. The record contains several one-page "disability certificates" (see, e.g., Tr. 544, 548, 558) upon which Dr. Backos checked a box indicating that Plaintiff is "disabled" from all "work/employment." First, these "certificates" are not entitled to any special deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 341 (6th Cir.2008); *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. App'x 472, 475–76 (6th Cir. 2008); 20 C.F.R. § 416.927(e)(1) (Commissioner is responsible for deciding the ultimate issue of disability and a statement

---

[2] The ALJ specifically cited to a November 25, 2011 MRI of Plaintiff's cervical spine ordered by Dr. Eltahawy, which showed a mild degenerative change with anterior minimal spurs at C4-5 and C5-6 and mild uncovertebral joint spurring on the left at C4-5 with foraminal narrowing but no stenosis (Tr. 61).

15

by a medical source that you are "disabled" or "unable to work" does not mean that claimant will be found disabled); SSR 96–5p, 61 Fed.Reg. 34471, 34472, 1996 WL 374183 (1996) (the issue of whether an individual is "disabled" under the Act is an administrative finding reserved to the Commissioner). Second, the ALJ's decision to discount Dr. Backos's conclusion that Plaintiff was "disabled" was sound, as this result was supported by references to objective medical evidence concerning Plaintiff's condition. In sum, this objection is not well-taken.

### iv) Push-Pull Restrictions

Finally, Plaintiff objects that Magistrate Judge Binder erred by not accepting Plaintiff's "many additional arguments in support of disability." This objection, therefore, appears to be in the nature of a catch-all. The two specific arguments raised by Plaintiff relate to (1) the ALJ's purported failure to "to provide a function by-function analysis (omitting Plaintiff's ability to push and/or pull)" and (2) a general objection about a failure to recognize Plaintiff's alleged mood disorder. As to the mood disorder, Plaintiff fails to specify any medical evidence in the record relating to a mood disorder which the ALJ

16

allegedly ignored. Indeed, it does not appear that the medical records include significant treatment for a mood disorder.

As to Plaintiff's ability to push or pull, the Commissioner argues persuasively that, even if the ALJ erred in not discussing Plaintiff's purported limitations in his ability to push or pull, the outcome of this case would not have changed because the ALJ found Plaintiff limited to a reduced range of sedentary work (Tr. 13). SSR 96–9p states restrictions on the ability to push or pull will generally have "little effect" on the unskilled sedentary occupational base. *See Riley v. Colvin*, No. 1:13-CV-23, 2014 WL 619558, at *4 (E.D. Tenn. Feb. 18, 2014) citing SSR 96–9p, 1996 WL 374185 at *6.

In any event, this generalized objection does not demonstrate that Magistrate Judge Binder's recommendation should not be adopted.

## CONCLUSION

For the reasons set forth above,

It is hereby **ORDERED** that Magistrate Judge Binder's report and recommendation of June 23, 2015 (Dkt. 12) is **ACCEPTED** and **ADOPTED**.

It is **FURTHER ORDERED** that Plaintiff's motion for summary judgment (Dkt. 10) is **DENIED** and Defendant's motion for summary judgment (Dkt. 11) is **GRANTED**.

It is **FURTHER ORDERED** that the findings and conclusions of the Commissioner are **AFFIRMED**.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2015

### Certificate of Service

I hereby certify that this Order was electronically submitted on September 30, 2015, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager